IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MEE MEE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | 8:16CV569 |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF HEALTH & HUMAN SERVICES, SHERI DAWSON, Director of Behavioral Health, JOHN KROLL, Director of Nursing @ Norfolk Regional Center, DIANE SCHUMACHER, Physician Assistant @ Norfolk Regional Center, AMR BELTAGUI, Personal Psychiatrist @ Norfolk Regional Center, LINDA HANSEN, Unit Supervisor @ Norfolk Regional Center, DIANNA MASTNY, and LORI STRONG, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Defendants. | ) ) | |

After review of Plaintiff's Complaint and Amended Complaint, the court granted Plaintiff leave to file a second amended complaint to allege how each of the defendants[1] were personally involved in (1) denying Plaintiff medical evaluation by a specialist and estrogen therapy for gender-identity disorder ("GID") (deliberate indifference claim); (2) failing to provide Plaintiff a reasonably safe environment in the form of a private bathroom (Fourteenth Amendment substantive due process claim); and (3) retaliating against Plaintiff for filing lawsuits and contacting the

---

[1]Plaintiff sues the defendants in their individual capacities only. (Filing No. 22 at CM/ECF p. 3.)

ombudsman (First Amendment retaliation claim). (Filing No. 15.)[2]

Plaintiff has now filed a Second Amended Complaint (Filing No. 22) and Supplemental Second Amended Complaint (Filing No. 23) which the court will review to determine whether any of Plaintiff's claims may proceed to service of process.[3]

## I. SUMMARY OF SECOND AMENDED COMPLAINT & SUPPLEMENT

Plaintiff is "an openly documented transgender male-to-female patient" at the Norfolk Regional Center ("NRC"), where she is civilly committed. Plaintiff seeks declaratory, injunctive[4], and monetary relief against the Nebraska Department of Health and Human Services and the other defendants in their individual capacities for violating her constitutional rights to treatment for her objectively serious medical need (gender-identity disorder), to a reasonably safe environment, and to engage in activity protected by the First Amendment. Specifically, Plaintiff makes the following

---

[2]On initial review of Plaintiffs first two complaints, the court expressly dismissed Plaintiff's claims for money damages against the Nebraska Department of Health and Human Services and for a transfer to outpatient therapy, as well as Plaintiff's claims that the defendants belittled her, defamed her, and failed to respond to her grievances in a timely fashion. The court also warned Plaintiff that her amended pleading would supersede, rather than supplement, her first two complaints. (Filing No. 15 at CM/ECF p. 13.)

[3]The legal standards and elements applicable to Plaintiff's claims were discussed in detail on initial review (Filing No. 15).

[4]Plaintiff requests that the court order Defendants to grant Plaintiff's request to seek medical attention for gender-identity disorder and to receive hormone treatments. (Filing No. 22 at CM/ECF p. 11.)

allegations[5] against each defendant:

**Sheri Dawson**

Dawson is the Director of Behavioral Health with the Nebraska Department of Health and Human Services ("NDHHS") with responsibility for the overall operations of various institutions, including the NRC. Dawson refused Plaintiff's requests to have her own private bathroom after male patients looked under a stall where Plaintiff was using the toilet. At some point, Plaintiff was allowed to place a cone in front of the patient bathroom while she used the restroom, but "several male patients entered the bathroom anyways." (Filing No. 22 at CM/ECF p. 4.) Dawson also refused to allow Plaintiff to "dress in clothing that matches her gender identity." (Filing No. 22 at CM/ECF p. 5.) After Plaintiff made several unanswered written and telephonic complaints to Dawson regarding these matters, Dawson told Plaintiff to forward all future complaints to the Nebraska Attorney General's Office.

---

[5]Plaintiff's allegations related to the NRC staff belittling and defaming her and failing to promptly respond to her grievances have not been included in the summary of Plaintiff's Second Amended Complaints because these claims were previously dismissed, and Plaintiff was expressly prohibited from amending her allegations to include such claims. (Filing No. 15 at CM/ECF pp. 12-13.) Further, the summary only includes "factual content," not Plaintiff's "recitation of the elements" of her claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) ("Although a plaintiff need not allege facts in painstaking detail, the facts alleged 'must be enough to raise a right to relief above the speculative level.' This standard 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))). Finally, all quoted material contains capitalization corrections that have not been noted in the citations to the Plaintiff's complaints.

**John Kroll**

Kroll is the Acting Facility Operating Officer at the NRC with responsibility for the operations and welfare of all inpatient residents at the NRC. Kroll refused Plaintiff's requests to have her own private bathroom after male patients looked under the stall where Plaintiff was using the toilet, thereby putting Plaintiff at "risk of harm by other male patients." (Filing No. 22 at CM/ECF p. 7.) Kroll wrote negative entries in Plaintiff's treatment file to the mental health board in retaliation for Plaintiff's desire to "exercise her transgender rights." (Filing No. 22 at CM/ECF p. 6.) Kroll has also refused to allow Plaintiff to progress in her treatment (keeping her at "Level 1" for the past six months), stating that "Plaintiff's voicing her rights to be allowed to dress in female dress[] is a treatment interfering behavior[] that the staff and named defendants do not like." (Filing No. 22 at CM/ECF p. 6.)

Plaintiff complains that when she was transferred from the Lincoln Regional Center ("LRC") to the Norfolk Regional Center, Kroll and the rest of Plaintiff's treatment team classified her at "Level 1" (apparently the lowest level), while two other patients who were forced to transfer to NRC started at Levels 2 and 3, despite the fact that one of these patients hit a LRC staff member and the other threatened a LRC staff member's family. Plaintiff alleges that her failure to advance on the treatment scale is "solely related to her transgender rights." (Filing No. 22 at CM/ECF p. 7.)

**Diane Schumacher**

Schumacher is a physicians' assistant at the NRC who met with Plaintiff during intake when she arrived at NRC. Schumacher approved Plaintiff's request to dress according to her gender identity, but denied her permission to use a private bathroom "because [Plaintiff] was categorized as male by genital." (Filing No. 22 at CM/ECF p. 9.) Schumacher also denied Plaintiff's request to begin taking estrogen and reminded Plaintiff that she was allowed to wear a bra—something her treatment team

4

did not condone—and that "this is an all[-]male facility, there's nothing that I can do about it, so let's just work on getting you back to Lincoln." (Filing No. 22 at CM/ECF p. 10.) Schumacher has since refused to communicate with Plaintiff.

Plaintiff alleges that she has suffered "mental and emotional stress" due to Schumacher's indifference to her serious medical needs "and has even at times contemplated mutilating her penis." (Filing No. 22 at CM/ECF p. 10.) Plaintiff alleges that Schumacher was aware that she took hormone pills before she was incarcerated.

### Amr Beltagui

Beltagui is a psychiatrist at the NRC who "suggest[ed] that Plaintiff be seen by a hormone therapist to determine Plaintiff's gender[-]identity disorder, but then disregarded Plaintiff's request to hormone therapy." (Filing No. 22 at CM/ECF p. 10.) Two weeks after Plaintiff arrived at NRC, Beltagui approved Plaintiff's request to wear a bra, but denied her request to wear female clothing. Plaintiff alleges that she has suffered "mental and emotional stress" due to Beltagui's indifference to her serious medical need "and has even at times contemplated mutilating her penis." (Filing No. 22 at CM/ECF p. 10.) Plaintiff alleges that Beltagui was aware that she took hormone pills before she was incarcerated.

### Linda Hansen

Hansen is a NRC unit supervisor. Plaintiff complains that when she was transferred from the LRC to the NRC, Hansen and the rest of Plaintiff's treatment team classified her at "Level 1" (apparently the lowest level), while two other patients who were forced to transfer to NRC started at Levels 2 and 3, despite the fact that one of these patients hit a LRC staff member and the other threatened a LRC staff member's family. Plaintiff alleges that her continued failure to advance on the treatment scale is "solely related to her transgender rights." (Filing No. 22 at CM/ECF p. 7.) Hansen has allegedly refused to allow Plaintiff to progress in her treatment

5

(keeping her at "Level 1" for the past six months), stating that "Plaintiff's voicing her rights to be allowed to dress in female dress[] is a treatment interfering behavior[] that the staff and named defendants do not like." (Filing No. 22 at CM/ECF p. 6.) Plaintiff also alleges that Hansen, Mastny, and Strong "conspired" in giving Plaintiff negative "scores" after Plaintiff contacted the ombudsman regarding the discrimination she was experiencing due to her attempt to transition from a man into a woman.

**Dianna Mastny**

Mastny is a NRC unit supervisor and is part of Plaintiff's treatment team. Plaintiff complains that when she was transferred from the LRC to the NRC, Mastny and the rest of Plaintiff's treatment team classified her at "Level 1" (apparently the lowest level), while two other patients who were forced to transfer to NRC started at Levels 2 and 3, despite the fact that one of these patients hit a LRC staff member and the other threatened a LRC staff member's family. Plaintiff alleges that her continued failure to advance on the treatment scale is "solely related to her transgender rights." (Filing No. 22 at CM/ECF p. 7.) Mastny has refused to allow Plaintiff to wear female clothing and to progress in her treatment (keeping her at "Level 1" for the past six months), stating that "Plaintiff's voicing her rights to be allowed to dress in female dress[] is a treatment interfering behavior[] that the staff and named defendants do not like." (Filing No. 22 at CM/ECF p. 6.) Mastny, Strong, and Hansen allegedly "conspired" in giving Plaintiff negative "scores" after Plaintiff contacted the ombudsman regarding the discrimination she was experiencing due to her attempt to transition from a man into a woman.

**Lori Strong**

Strong is a registered nurse at the NRC and is part of Plaintiff's treatment team. Plaintiff complains that when she was transferred from the LRC to the NRC, Strong and the rest of Plaintiff's treatment team classified her at "Level 1" (apparently the lowest level), while two other patients who were forced to transfer to NRC started at

Levels 2 and 3, despite the fact that one of these patients hit a LRC staff member and the other threatened a LRC staff member's family. Plaintiff alleges that her failure to advance on the treatment scale is "solely related to her transgender rights." (Filing No. 22 at CM/ECF p. 7.) Strong has refused to allow Plaintiff to wear female clothing and to allow Plaintiff to progress in her treatment (keeping her at "Level 1" for the past six months), stating that "Plaintiff's voicing her rights to be allowed to dress in female dress[] is a treatment interfering behavior[] that the staff and named defendants do not like." (Filing No. 22 at CM/ECF p. 6.) Strong, Mastny, and Hansen allegedly "conspired" in giving Plaintiff negative "scores" after Plaintiff contacted the ombudsman regarding the discrimination she was experiencing due to her attempt to transition from a man into a woman.

### Dr. Jean Lange

Lange is part of the NRC "administration." She allegedly told Plaintiff that "due to plaintiff exercising female characteristics, name usage, and wearing a female bra, and for filing the above number[ed] civil action, 'there is no way you will progress through NRC.'" (Filing No. 23 at CM/ECF p. 1.) Lange told Plaintiff that portraying a female in an all-male treatment facility is a "cognitive distortion," and regardless of the amount of lawsuits Plaintiff files, Plaintiff "will not progress in coming back" to the Lincoln Regional Center. (Filing No. 23 at CM/ECF pp. 1-2.) Lange told Plaintiff that her requests for a private bathroom and to wear female or gender-neutral clothing were the reason for Plaintiff's "scores not moving," and Plaintiff's treatment team believed that these requests interfered with Plaintiff's treatment. (Filing No. 23 at CM/ECF p. 2.)

### Dr. David Mitchell

Mitchell is the NRC "scoring coordinator" and part of the NRC "administration." When Plaintiff questioned Mitchell about her assigned "level," he said, "You requested to come back to Norfolk, and maybe you'll move forward if you

just stop suing people." (Filing No. 22 at CM/ECF pp. 6-7.) He allegedly told Plaintiff that "due to plaintiff exercising female characteristics, name usage, and wearing a female bra, and for filing the above number[ed] civil action, 'there is no way you will progress through NRC.'" (Filing No. 23 at CM/ECF p. 1.) Mitchell told Plaintiff that she has "a history of turning to the court" when she feels wronged and that Plaintiff's scores dropped because of her "past sexual behavior and cognitive distortion" and Plaintiff's "voicing and talking as a female." (Filing No. 23 at CM/ECF p. 3.)

**Beverly Leushen**

Leushen is part of the NRC "administration." She allegedly told Plaintiff that "due to plaintiff exercising female characteristics, name usage, and wearing a female bra, and for filing the above number[ed] civil action, 'there is no way you will progress through NRC.'" (Filing No. 23 at CM/ECF p. 1.)

**Donna Crist**

Crist is part of the NRC "administration." She allegedly told Plaintiff that "due to plaintiff exercising female characteristics, name usage, and wearing a female bra, and for filing the above number[ed] civil action, 'there is no way you will progress through NRC.'" (Filing No. 23 at CM/ECF p. 1.) When Plaintiff asked why she was still at Level 1 after six months, Crist allegedly stated, "Well look at you, you really need to stop this, and do your treatment instead of filing lawsuits. You were told this before, filing civil work ain't gonna get you through treatment, so if you wanna sue the state, go ahead we'll keep the light on for ya!" (Filing No. 23 at CM/ECF p. 2.)

**All NRC Staff**

Plaintiff alleges that the NRC staff was "aware of Plaintiff's action against the state." (Filing No. 22 at CM/ECF p. 8.) Plaintiff also claims that NRC female staff and administrators on Plaintiff's treatment team were "unacceptable" of Plaintiff's name

8

change to "Mee Mee" and of Plaintiff wearing a bra. (Filing No. 23 at CM/ECF p. 2.) Plaintiff alleges that all named defendants have retaliated against her for "exercising her gender identity," for not acting like a male patient, and for voicing her grievances to the court. (Filing No. 23 at CM/ECF pp. 3-4.)

## II. DISCUSSION

As previously directed (Filing No. 15), Plaintiff has alleged facts indicating how each defendant was personally involved in alleged constitutional violations, thereby putting each defendant on notice of the nature of such claims and the grounds upon which those claims rest. Applying the standards of review and elements of Plaintiff's claims, as previously set forth on initial review of Plaintiff's original complaints (Filing No. 15), and considering the factual allegations Plaintiff makes against each defendant, the court concludes that three of Plaintiff's claims may go forward, while one claim and one party must be dismissed for failure to state a claim upon which relief can be granted.

### A. Deliberate Indifference Claim

Plaintiff's claim that the defendants continue to deny her a medical evaluation by a specialist and estrogen therapy for her known and objectively serious medical need (gender-identity disorder)[6] may proceed against defendants Schumacher and

---

[6] In order to eventually prevail on this claim, Plaintiff must demonstrate that (1) she suffered from an objectively serious medical need, and (2) the defendants knew of, but deliberately disregarded, that need. *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016) (as amended Mar. 4, 2016). "A medical condition is 'objectively serious' if the prisoner was diagnosed by a doctor or it is so obvious that a lay person would recognize the medical need." *Id.* "The subjective prong of deliberate indifference is an extremely high standard that requires a mental state of more . . . than gross negligence. It requires a mental state akin to criminal recklessness." *Id.* (internal quotation marks and citations omitted).

9

Beltagui.

## B. Substantive Due Process Claim

Plaintiff's claim that the defendants have failed to provide her with a reasonably safe environment in the form of a private bathroom[7] shall be dismissed against all defendants for failure to state a claim upon which relief can be granted. Despite having filed four different complaints, Plaintiff has failed to allege that the defendants intentionally violated their duty to provide a "reasonably safe environment" for Plaintiff (such as a staff member criminally assaulting Plaintiff) or were deliberately indifferent to a known excessive risk to Plaintiff (such as a fellow patient assaulting Plaintiff). *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006). Rather, Plaintiff has only alleged that her fellow patients have engaged in juvenile pranks like peeking under her toilet stall or entering the restroom when Plaintiff was using the facilities, despite placement of a cone in front of the restroom indicating that Plaintiff was in the restroom. Plaintiff's complaints contain no allegations of excessive risk to patient safety—only the possibility that Plaintiff might eventually be harmed by her fellow patients. Under these circumstances, granting Plaintiff leave to file yet another amended complaint would be futile.

---

[7]State officials have a duty imposed by the Substantive Due Process Clause of the Fourteenth Amendment to provide a "reasonably safe environment" for individuals involuntarily confined in a state mental health facility. *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006) (quoting *Beck v. Wilson*, 377 F.3d 884, 890 (8th Cir. 2004)). "To recover under § 1983 for a breach of that constitutional duty, a plaintiff must prove that a state official either intentionally violated the duty (such as criminal assault by a staff member) or was deliberately indifferent to a known excessive risk to patient safety (such as assault by another patient)." *Id.*

## C. First Amendment Retaliation Claim

Plaintiff's claim[8] that the defendants have prevented her from advancing in her treatment program in retaliation for Plaintiff filing lawsuits and contacting the ombudsman regarding the exercise of her "transgender rights" may proceed against defendants Kroll, Hansen, Mastny, Strong, Lange, Mitchell, Leushen, and Crist.

## D. Equal Protection Claim

Plaintiff's Second Amended Complaint and Supplemental Second Amended Complaint both allege that the defendants violated the Equal Protection Clause's prohibition against sex-based discrimination when the defendants treated her unfavorably because of her gender non-conformity. Similar claims have been allowed to proceed under the Equal Protection Clause. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."); *Whitaker v. Kenosha Unified School Dist. No. 1 Board of Educ.,* ___ F.3d ___, No. 16-3522, 2017 WL 2331751 (7th Cir. May 30, 2017) (affirming grant of preliminary injunction prohibiting school district from denying transgender male student's access to boys' restroom because student

---

[8]To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) she engaged in protected activity; (2) the government official took adverse action against her that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Revels v. Vincenz,* 382 F.3d 870 (2004) (citing *Naucke v. City of Park Hills,* 284 F.3d 923, 927-28 (8th Cir. 2002)). Further, "[t]o prevail in an action for First Amendment retaliation, [a plaintiff] must show a causal connection between [the defendant's] retaliatory animus and [the plaintiff's] subsequent injury." *Kilpatrick v. King,* 499 F.3d 759, 767 (8th Cir. 2007) (citing *Hartman v. Moore,* 547 U.S. 250 (2006)).

11

sufficiently demonstrated likelihood of success on claim that school district policy is a classification based upon sex and that heightened scrutiny—not rational basis—applies to student's equal protection claim and because school district failed to demonstrate a genuine and "exceedingly persuasive" justification for its bathroom policy); *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011) (holding that discriminating against someone on the basis of his or her gender non-conformity constitutes sex-based discrimination under the Equal Protection Clause; noting the "congruence between discriminating against transgender and transsexual individuals and discrimination on the basis of gender-based behavioral norms"); *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004) (discrimination against transgender individual because of his or her gender non-conformity is gender stereotyping prohibited by Equal Protection Clause).

While the court will ultimately need to determine the level of scrutiny[9] applicable to the government action at issue, Plaintiff's allegations are sufficient at the

---

[9]No matter what level of scrutiny applies, the defendants' treatment of Plaintiff must be balanced against penological interests like safety and protection from violence. *Fegans v. Norris*, 537 F.3d 897, 906 (8th Cir. 2008) (inmate's equal protection claim failed when prison had valid penological interests of safety and security for differing hair-length rules for men and women); *Tates v. Blanas*, No. S-00-2539, 2003 WL 23864868, at *10 (E.D. Cal. Mar. 11, 2003) ("With regard to [transsexual detainee's request for a] bra, the possibility that it could be misused as a weapon or noose must be balanced against any medical or psychological harm to him resulting from denial of a bra"; defendants may not "apply a categorical rule . . . that denies an inmate a bra simply because he is a transgender or is housed in a men's ward"). Further, "class-of-one" equal protection claims may not apply to state action that involves "'discretionary decisionmaking based on a vast array of subjective, individualized assessments. . . . because treating like individuals differently is an accepted consequence of the discretion granted.'" *Robbins v. Becker*, 794 F.3d 988, 995 (8th Cir. 2015) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602-04 (2008)). Here it could be argued that the defendants' treatment and classification decisions regarding Plaintiff were discretionary, and therefore not subject to a class-of-one equal protection claim. Such arguments may be raised during motion practice.

pleading stage to state an equal protection claim. *See Denegal v. Farrell*, No. 1:15-cv-1251, 2016 WL 3648956, at *7 (E.D. Cal. July 8, 2016) (Findings and Recommendations of Magistrate Judge adopted on Sept. 9, 2016) ("The level of scrutiny applicable to classifications based on transgender status has not been determined by the United States Supreme Court," and "[c]ourts in this circuit have reached differing conclusions as to the level of scrutiny to be applied."); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 140 (S.D.N.Y. 2015) (concluding that "transgender people are a quasi-suspect class" and court "must apply intermediate scrutiny to defendants' treatment of plaintiff" in § 1983 action brought by transgender arrestee against city officials); *Fields v. Smith*, 712 F. Supp. 2d 830 (E.D. Wis. 2010), *aff'd*, 653 F.3d 550 (7th Cir. 2011) (applying rational basis review to equal protection claim brought by inmates with gender-identity disorder).

Therefore, I shall allow Plaintiff's equal protection claim to go forward against all defendants.

### E.  Nebraska Department of Health & Human Services

Plaintiff's claims for monetary relief against the Nebraska Department of Health and Human Services were previously dismissed as barred by the Eleventh Amendment. (Filing No. 15 at CM/ECF p. 13.) Plaintiff's claims for declaratory and injunctive relief against this state agency shall also be dismissed. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (while "state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies"; claims for a declaration of past constitutional violations against state agencies are barred by Eleventh Amendment sovereign immunity).

### F.  Plaintiff's Motion for Appointment of Counsel

This case is still in its early stages, and it is not clear that Plaintiff and the court

will benefit from the appointment of counsel at this point. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006) (there is no constitutional or statutory right to appointed counsel in civil cases, and 28 U.S.C. § 1915(e) says court "may" appoint counsel); *Trotter v. Lawson*, 636 F. App'x 371, 373 (8th Cir. 2016) (unpublished) (appointed counsel may not be warranted early in proceedings and when it is not clear that plaintiff has difficulty in obtaining and presenting admissible evidence and lacks skills to present case to jury); *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996) ("Indigent civil litigants do not have a constitutional or statutory right to appointed counsel. The trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel[.]" (internal citation and quotation marks omitted)). Thus, Plaintiff's request for the appointment of counsel will be denied without prejudice to reassertion.

IT IS ORDERED:

1. The clerk of the court shall add the following defendants to the caption of this case: Dr. Jean Lange, Dr. David Mitchell, Beverly Leushen, and Donna Crist.

2. Plaintiff's deliberate indifference claim may proceed against defendants Schumacher and Beltagui in their individual capacities;

3. Plaintiff's substantive due process claim is dismissed for failure to state a claim upon which relief can be granted;

4. Plaintiff's First Amendment retaliation claim may proceed against defendants Kroll, Hansen, Mastny, Strong, Lange, Mitchell, Leushen, and Crist in their individual capacities;

5. Plaintiff's equal protection claim may proceed against all defendants in their individual capacities;

6. Plaintiff's claims for declaratory and injunctive relief against the Nebraska Department of Health and Human Services are dismissed, and the clerk of the court shall remove this defendant from the caption of this case on the court's electronic docket sheet;

7. Plaintiff's Motion for Appointment of Counsel (Filing No. 27) is denied without prejudice to reassertion;

8. For service of process on defendant Sheri Dawson in her individual capacity, the clerk of the court is directed to complete a summons form and a USM-285 form for defendant Dawson using the address 301 Centennial Mall South, Division of Behavioral Health, P.O. Box 95026, Lincoln, NE 68509-5026. For service of process on defendants Kroll, Hansen, Mastny, Strong, Lange, Mitchell, Leushen, Crist, Schumacher, and Beltagui in their individual capacities, the clerk of the court is directed to complete a summons form and a USM-285 form for such defendants using the address 1700 N. Victory Road, P.O. Box 1209, Norfolk, NE 68702-1209 and forward them together with a copy of the Second Amended Complaint (Filing No. 22), the Supplemental Second Amended Complaint (Filing No. 23), and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve**[10] **defendant Dawson personally in her individual**

---

[10]Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "**[t]he officers of the court shall issue and serve all process, and perform all duties in such cases**." *See Moore v. Jackson,* 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be

15

**capacity at the Nebraska Department of Health & Human Services, 301 Centennial Mall South, Division of Behavioral Health, P.O. Box 95026, Lincoln, NE 68509-5026. The Marshals Service shall serve defendants Kroll, Hansen, Mastny, Strong, Lange, Mitchell, Leushen, Crist, Schumacher, and Beltagui personally in their individual capacities at the Norfolk Regional Center, 1700 N. Victory Road, P.O. Box 1209, Norfolk, NE 68702-1209**. Service may also be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).

9. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 120 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 120 days from the date of this order to complete service of process.

10. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

11. The clerk of the court is directed to set the following pro se case management deadline: October 2, 2017—Check for completion of service of process.

DATED this 2nd day of June, 2017.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge

---

able to ascertain defendant's current address).